Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

BUCHANAN INGERSOLL & ROONEY PC
Thomas G. Collins (I.D. #75896)
Sara E. Myirski (I.D. #321113)
Cheri A. Sparacino (I.D. #325868)
409 North Second Street, Suite 500
Harrisburg, PA 17101
Tel: (717) 237-4800
thomas.collins@bipc.com
sara.myirski@bipc.com
cheri.sparacino@bipc.com

*Counsel for Plaintiffs*

| | |
|---|---|
| WEST SHORE HOME, LLC and WEST SHORE HOME HOLDINGS, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG CHAPPELL,<br><br>*Defendant.* | IN THE COURT OF COMMON PLEAS OF CUMBERLAND COUNTY, PENNSYLVANIA<br><br>Civ. No. 2022-00533 |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR SPECIAL/PRELIMINARY INJUNCTION

Plaintiffs, West Shore Home, LLC ("West Shore Home") and West Shore Home Holdings, LLC ("WSH Holdings", collectively with West Shore Home, "WSH" or "Plaintiffs"), by and through their undersigned counsel, Buchanan Ingersoll & Rooney PC, hereby submit this Brief in Support of their Motion for a Special Injunction with Notice and a Preliminary Injunction After a Hearing against former employee, Defendant Craig Chappell ("Chappell" or "Defendant").

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2022, WSH filed a Verified Complaint with this Court seeking, *inter alia*, to enjoin its ex-employee, Craig Chappell, from breaching his contracts with WSH and misappropriating West Shore's trade secrets.

# EXHIBIT A3

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

As detailed in the Verified Complaint and Motion for Special/Preliminary Injunction, Defendant is blatantly ignoring his non-solicit, non-compete, and non-disclosure obligations to WSH. If left unabated, Defendant will unfairly and unlawfully exploit West Shore's Confidential Information and Trade Secrets in violation of Defendant's continuing contractual obligations to WSH.

Without an immediate injunction from Defendant's wrongful and unlawful conduct, WSH will be irreparably harmed in the nature of loss of customer and vendor good will and loss and disclosure of its confidential and proprietary business information and trade secrets. Under similar circumstances, Pennsylvania courts have enjoined former employees and businesses. *See e.g.,* *WellSpan Health v. Bayliss*, 869 A.2d 990, 1003 (Pa. Super. 2005); *A.M. Skier Agency, Inc. v. Gold, et al.*, 747 A.2d 936, 939 (Pa. Super. 2000); *Air Prods. & Chem., Inc. v. Johnson et al.*, 442 A.2d 1114, 1121-22 (Pa. Super. 1982); *see also Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 110 (3d Cir. 2010) (applying Pennsylvania law).

## II.    LEGAL STANDARD

Pennsylvania law recognizes preliminary or special injunctions, which may be granted with or without notice to the adverse party as a functional equivalent. *Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist.*, 938 A.2d 1177, 1182 (Pa. Cmwlth. 2007). Under Rule 1531(a) of the Pennsylvania Rules of Civil Procedure:

> A court shall issue a preliminary or special injunction only after written notice and hearing *unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice.*

Pa. R.C.P. 1531(a) (emphasis added).

2

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

A preliminary or special injunction is properly issued when a plaintiff demonstrates: (1) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; (2) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (3) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; (4) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (5) that the injunction it seeks is reasonably suited to abate the offending activity; and (6) that the preliminary injunction will not adversely affect the public interest. *Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004).

## III.    ARGUMENT

### A.    WSH Has Shown a Likelihood of Success on the Merits of its Claims Against Defendant

As a preliminary matter, the injunctive relief that WSH seeks in this case is predicated on Defendant's failure to comply with post-employment contractual obligations that he owes to WSH. While further discovery will solidify WSH's breach of contract claims and misappropriation of trade secrets claims, the evidence that WSH has presented through its papers necessitates a special injunction with notice.

### *1.    WSH Will Succeed on its Breach of Contract Claims*[1]

Defendant's non-solicit, non-compete, and non-disclosure obligations are memorialized in his Employment Agreement (as defined in the Verified Complaint), which he executed on August

---

[1] At the outset, WSH submits that the agreements at the heart of this matter are governed by differing state laws.  Irrespective of the applicable law, the outcome remains the same.

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

4, 2020, and his Phantom Unit Agreement (as defined in the Verified Complaint), which he executed on January 4, 2021. WSH addresses its claims as to the restrictive covenants arising under these Agreements in turn.

    a.    <u>Defendant's Post-Employment Obligations under the Employment Agreement are Enforceable</u>

Relevant to the enforceability of the restrictive covenants in Defendant's Employment Agreement, the Employment Agreement contains a choice of law provision designating Pennsylvania law as the governing law. *See* Complaint ("Compl.") Ex. A at § 7(h) ("This Agreement shall be governed by and construed exclusively in accordance with the laws of the Commonwealth of Pennsylvania[.]"). It is well settled that when parties have designated that the law of a particular state should apply to their agreement, Pennsylvania courts will apply that choice of law provision. *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. 2002); *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 403 (Pa. Super. 2000); *Smith v. Com. Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. 1989). Thus, this Court should analyze WSH's claims that Defendant breached his Employment Agreement under Pennsylvania law.

To be enforceable under Pennsylvania law, restrictive covenants must (1) be incident to an employment relationship between the parties and supported by adequate consideration; (2) reasonably necessary for the protection of the employer's legitimate and important business interests; and (3) reasonably limited in duration and geographic extent. *Missett v. HUB Int'l Pa. LLC*, 6 A.3d 530, 539 (Pa. Super. 2010).

    *i.*    ***The Employment Agreement is Incident to His Employment Relationship with West Shore and Supported by Sufficient Consideration***

As to the first prong of enforcement of restrictive covenants, Pennsylvania law requires that the covenants are incident to an employment relationship between the parties and supported by adequate consideration. *Hess v. Gebhard & Co.*, 808 A.2d 912, 916 (Pa. 2002). If the restrictive

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

covenant "is agreed upon at some later time it must be supported by new consideration." *George W. Kistler, Inc. v. O'Brien*, 347 A.2d 311, 316 (Pa. 1975).

As discussed more fully in the Verified Complaint, on August 4, 2020, Defendant executed an Employment Agreement with West Shore, which contained non-compete, non-solicit, and non-disclosure obligations. In consideration for signing the Employment Agreement, and his promise to be bound by the restrictive covenants contained therein, Defendant received continued employment with West Shore as well as a "signing bonus" of $5,000. Compl. ¶ 16; Compl. Ex. A. § 2(b).

While Pennsylvania law does not adhere to the principle that continued employment serves as adequate consideration in exchange for agreements entered into *after* the commencement of employment, it does provide that "[c]onsideration for the additional restrictions of a restrictive covenant may be monetary or related to employment status." *Wincup Holdings, Inc. v. Hernandez*, No. 04-CV-1330, 2004 WL 953400, at *3 (E.D. Pa. May 3, 2004) (applying Pennsylvania law). Thus, Defendant's receipt of the $5,000 signing bonus certainly satisfies this requirement. *See also Davis & Warde, Inc. v. Tripodi*, 616 A.2d 1384 (Pa. Super. 1992) (finding that $100 cash payment was adequate consideration for employment contract, containing restrictive covenants, entered into after commencement of employment).

        *ii.*        ***The Employment Agreement Contains Restrictive Covenants that are Reasonably Necessary to Protect West Shore's Legitimate and Important Business Interests***

The Employment Agreement makes clear that the restrictive covenants contained therein are "reasonably necessary for the protection of the business, trade secrets and Confidential Information" of WSH. Compl. Ex. A at § 5. Such interests—the protection of confidential information and trade secrets, customer goodwill, and an employer's efforts to extensively and continuously train employees in special methods—have been recognized as protectable, legitimate

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and important business interests under Pennsylvania law. *WellSpan Health v. Bayliss*, 869 A.2d 990, 997 (Pa. Super. 2005) (protectable interests include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in specialized training program for employee); *see also Hess*, 808 A.2d at 920 (protectable interests include the protection of a business opportunity or market advantage and skills acquired from the employer); *Pa. Funds Corp. v. Vogel*, 159 A.2d 472, 475-76 (Pa. 1960) ("efforts and moneys" invested by employer to provide employee with specialized training in the methods of employer's business).

During his employment with West Shore, as he climbed the ranks from Media Manager to Director of Media, Defendant gained specialized, extensive, and intimate knowledge and on-the-job training as to West Shore's unique marketing and lead generation methods, as well as how West Shore tracks marketing performance and utilizes millions of dollars' worth of data to build its unique marketing mix. Compl. ¶¶ 26, 28, 33. To further underscore the point, this information included, without limitation: customer information; employee information; identities and contact information for marketing partners; demographic profiles; pricing and negotiated deals with marketing partners; current and historic performance records for every marketing channel West Shore utilizes; performance of promotional offers, including discounts, finance plans, effectiveness of marketing language, style of the creative, format length, and placement; creative testing strategy and results used to drive marketing plan adjustments; West Shore's selling system; call center processes, scripts, and key performance indicators; and corporate strategic and performance information at the branch and corporate level. Compl. ¶ 33. This knowledge alone supports the need for Defendant's non-solicit, non-compete, and non-disclosure obligations.

Moreover, the need for these restrictive covenants is bolstered by Defendant's attempts to interfere with West Shore's relationships with its marketing partners, vendors, licensors, dealer

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

networks, and other business relationships in the home remodeling industry. Defendant has specifically targeted these relationships because of his intimate knowledge of West Shore's marketing and lead generation methods. It is beyond dispute that Defendant's starting of his own business, Optimized Lead Generation ("OLG"), as well as the services he has already provided to West Shore competitors, both inside and outside West Shore's service territories, violates the non-solicitation, non-competition, and non-disclosure obligations he owes to West Shore, and will inevitably lead to the disclosure of West Shore's confidential, proprietary, and/or trade secret information to one or more of its competitors.

For these reasons, the restrictive covenants within Defendant's Employment Agreement are reasonably necessary to protect West Shore's legitimate and important business interests.

### iii.     The Employment Agreement Contains Restrictive Covenants that are Reasonably Limited in Duration and Geographic Extent

As set forth more fully in the Verified Complaint, the restrictive covenants within Defendant's Employment Agreement contain certain limitations as to duration and geographic extent. As to his non-competition obligations, Defendant agreed that, for a period of 24 months after the termination of his employment with West Shore, he would not work for any competing business within 250 miles of any West Shore location. Compl. Ex. A § 5(a). Defendant's non-solicitation obligation also provides for a 24-month duration starting at the time of his termination of employment. *Id.* § 5(b). As to his non-disclosure obligations, Defendant agreed that he would not use or disclose West Shore's Confidential Information and Trade Secrets for a period of 3 years after the termination of his employment with West Shore. *Id.* § 6(a). Of note, Defendant expressly agreed that the restrictive covenants were reasonable. *Id.* § 5.

In Pennsylvania, courts have repeatedly upheld post-employment covenants with terms of 1 to 3 years after employment ends where reasonable under the circumstances. *Volunteer*

7

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Firemen's Ins. Servs., Inc. v. CIGNA Property & Cas. Ins. Agency*, 693 A.2d 1330, 1338 (Pa. Super. 1997) (three years); *John G. Bryant Co. v. Sling Testing & Repair*, 369 A.2d 1164, 1166 (Pa. 1977) (three years); *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 251 (Pa. 1976) (two years). Where, as here, Defendant has created his own business, OLG, which provides services that are similar to, if not identical to, the services he performed for WSH as Media Manager and Director of Media, a two- to three-year restriction is reasonable in duration.

As to scope, the 250-mile geographic limitation in Defendant's non-compete is reasonable given West Shore's nationwide business and marketing presence. Further, the lack of a geographic limitation in Defendant's non-solicit and non-disclosure is not dispositive. Instead, courts, applying Pennsylvania law, have held that where an employer's customer base is nationwide or worldwide, it may not be necessary for post-employment restraints to have any express geographic limitations. *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007); *see also Volunteer Firemen's*, 693 A.2d at 1338 (nationwide geographical scope of restrictive covenant comparable to the market serviced by both parties; *Pulse Techs., Inc. v. Dodrill*, 2007 WL 789434, at *10 (D. Or. Mar. 14, 2007) (applying Pennsylvania law) (two-year, nationwide covenant was reasonable where former employee had the potential to cause harm outside the geographical region he had served).[2]

For all of these reasons, the restrictive covenants in Defendant's Employment Agreement meet the requirements for enforcement under Pennsylvania law.

---

[2] While the Employment Agreement should be upheld as drafted, should this Court find the restrictive covenants to be unreasonable in duration or geographic scope, this Court may modify or blue pencil the covenants. *See WellSpan Health*, 869 A.2d at 996 (explaining that Pennsylvania courts have the authority to reform agreements to enforce only those provisions reasonably necessary for protection of the employer). To the extent this Court finds the restrictive covenants to be unreasonable, it is entitled to modify the terms of the Employment Agreement in a way that reasonably protects West Shore.

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    b.    <u>Defendant's Post-Employment Obligations under the Phantom Unit Agreement are Enforceable</u>

Defendant's non-solicit, non-compete, and non-disclosure obligations are further memorialized in the Phantom Unit Agreement, executed on January 4, 2021, which provided Defendant with the opportunity for significant incentive compensation over time based on WSH's performance as outlined more fully in the Phantom Incentive Equity Plan (as defined in the Complaint).

Relevant to the enforceability of Defendant's contractual obligations, the Phantom Unit Agreement contains a choice of law provision designating that Delaware law shall apply with respect to enforcement of the Plan. Compl. Ex. B § 6(j) (emphasis added) ("issues and questions concerning the application, construction, validity, interpretation ***and enforcement of this Plan***...shall be governed by, and construed in accordance with, the laws of the State of Delaware...")). Accordingly, this Court should analyze WSH's claims that Defendant breached the Phantom Unit Agreement under Delaware law. *See Nationwide*, 807 A.2d at 920; *Miller*, 763 A.2d at 403; *Smith*, 557 A.2d at 777.

Under Delaware law, a restrictive covenant is enforceable where: (1) it is supported by sufficient consideration; (2) is reasonably limited in duration and geographic scope; (3) it advances a legitimate business interest of the employer; and (4) survives a balance of the equities. *Am. Homepatient, Inc. v. Collier*, 2006 WL 1134170, at *2 (Del. Ch. Apr. 19, 2006).

*i.    The Phantom Unit Agreement is Supported by Sufficient Consideration*

In exchange for his agreement to be bound by the restrictive covenants in the Phantom Unit Agreement, Defendant received substantial consideration. First, Defendant received adequate consideration by way of continued employment with West Shore. Delaware courts hold that "continued employment of an employee whose position is terminable at will constitutes sufficient

9

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

consideration to support an enforceable contract." *Research & Trading Corp. v. Powell*, 468 A.2d 1301, 1305 (Del. Ch. 1983); *see also Research & Trading Corp. v. Pfuhl*, Civ. A. No. 12527, 1992 WL 345465, at *9 (Del. Ch. Nov. 18, 1992) ("It appears to be the law that the retention of an employee at will, in exchange for a covenant not to compete with the employer, constitutes consideration sufficient to support contractual obligations.") (quoting *Powell*, 468 A.2d at 1305); *Newell Rubbermaid Inc. v. Storm*, No. Civ. A 9398-VCN, 2014 WL 1266827, at *9 (Del. Ch. Mar. 27, 2014) (continued employment alone may "serve as consideration for an at-will employee's agreement to a restrictive covenant."); *All Pro Maids, Inc. v. Layton*, No. Civ. A 058-N, 2004 WL 1878784 (Del. Ch. Aug. 9, 2004) (same). Thus, applying Delaware law and principles, Defendant's continued employment with West Shore was sufficient consideration in exchange for his execution of the Phantom Unit Agreement. In this regard, the Phantom Unit Agreement is valid.

Second, and beyond his continued employment with West Shore, Defendant received Phantom Units as consideration for the restrictive covenants. Performance-based and time-based restrictive stock units in exchange for post-employment restrictive covenants have been recognized as valid consideration under Delaware law. *See Newell*, 2014 WL 1266827, at *9.

### ii. *The Phantom Unit Agreement Contains Restrictive Covenants that are Reasonably Limited in Duration and Geographic Scope*

As set forth more fully in the Verified Complaint, Defendant expressly agreed that the non-solicitation and non-competition obligations pursuant to the Phantom Unit Agreement would endure for a period of 24 months after the termination of his employment with West Shore. *See* Compl. Ex. B at Ex. A §§ 1, 2. "Delaware courts have routinely found restrictive covenants with a duration of two years to be reasonable in duration." *TP Grp.-CI, Inc. v. Vetecnik*, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016); *see also Weichert Co. of Pa. v. Young*, 2007 WL 4372823,

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

at *3 (Del. Ch. Dec. 7, 2007) (noting restrictive covenants of two-years' duration are consistently held to be reasonable); *Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. Ch. 1969) (finding enforcement of a restrictive covenant for two years was reasonable). Further, given the efforts West Shore has expended to protect its Confidential Information and Trade Secrets, the Court should find that the lack of duration as to Defendant's non-disclosure obligations is reasonable to protect West Shore's business.

The lack of a geographic limitation as to these restrictive covenants is not dispositive under Delaware law. In *Pfuhl*, 1992 WL 345465, at *11-*12, the Delaware court found that the covenant in question lacked a geographic limitation. Given the broad distribution of the employer's customers geographically, and the limited nature of relief, *i.e.*, enforcement of the covenant, the court found that it was not unreasonable to restrict the employee-defendant from dealing with customers wherever located. It explained:

> While most judicial opinions regarding the reasonableness of the geographic extent of employee non-competition agreements speak in terms of physical distances, the reality is that it is the employer's goodwill in a particular market which is entitled to protection. If this market, or more accurately, the employer's customer base, extends throughout the nation, or indeed even internationally, and the employee would *gain from the employment* some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location.

Also, in *WebMD Health Corp. v. Dale*, No. 11-cv-5827, 2012 WL 3263582, at *12 (E.D. Pa. 2012), the court, applying Delaware law, explained that the covenant's unlimited geographic reach was *not unwarranted* given that the employer's website could be viewed internationally. Further, the unlimited geographic reach was found to be necessarily limited by the agreement's

11

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

application to competitive businesses, rather than the possibility of employment anywhere in the world. *See also Powell*, 468 A.2d 1301 (upholding nationwide covenant).

While Defendant's West Shore employment was limited to Pennsylvania, he had significant access to West Shore's business and marketing strategy information on a company-wide basis. In other words, he was privy to West Shore's marketing information that applied to *all* of West Shore's locations. Therefore, the non-compete is appropriate and should be upheld as drafted.[3]

### iii. *The Phantom Unit Agreement Contains Restrictive Covenants that Advance West Shore's Legitimate and Important Business Interests*

Under Delaware law, legitimate business interests are recognized as client relationships, customer goodwill, and confidential and proprietary information. *See Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *20 (Del. Ch. July 22, 2015) (finding legitimate interests recognized by Delaware law include protection of employer goodwill and protection of employer confidential information from misuse); *Pfuhl*, 1992 WL 345465 at *12 (finding interests which the law has recognized as legitimate include protection of employer goodwill created by employees and protection of employer confidential information, and recognizing that customer relationships should be protected from interference by a former employee who created them); *see generally Tri-State Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004) (explaining that an employer has legitimate interest in preventing former employee's contacts, developed as an employee and officer, from being used in competition against employer).

---

[3] To the extent that this Court finds that the duration and scope of the restrictive covenants within Defendant's Phantom Unit Agreement are unreasonable, it may blue pencil the covenants. First, the Phantom Unit Agreement provides for such modification. *See* Compl. Ex. B at Ex. A § 8. Second, courts in Delaware may blue pencil restrictive covenant agreements that may be otherwise unenforceable if the equities so dictate. *WebMD Health Corp.*, 2012 WL 3263582 (applying Delaware law to action seeking to enforce covenant not to compete).

By signing the Phantom Unit Agreement, Defendant acknowledged the legitimate interests WSH was seeking to protect through the restrictive covenants. *See* Ex. B at Ex. A § 8 ("the covenants contained [in the Phantom Unit Agreement] are essential for the protection of the trade secrets, confidential business and technological information, customer relationships, and competitive position of [West Shore.]"). This Court should therefore find that Delaware law deems WSH's articulated interests as legitimate and important.

### iv.     *Enforcement of the Phantom Unit Agreement Survives a Balance of the Equities*

Finally, the balance of equities necessitates this Court upholding Defendant's post-employment obligations. *See Young*, 2007 WL 4372823, at *5 (finding "equity may decline to grant specific enforcement if the interests that the employer seeks to protect are ephemeral in contrast to the grave harm to the employee resulting from enforcing the restriction.") (internal quotation and citation omitted); *Pfuhl*, 1992 WL 345465, at *7 (same). In the context of a restrictive covenant, "[p]rotection from the economic damage resulting from competition by former employees is regularly granted in equity when a legal basis for such protection-such as misappropriation of trade secrets or valid covenants restricting future competition-is demonstrated and the balance of the equities favors plaintiff." *E. Edgar Wood, Inc. v. Clark*, No. CIV. A. 883-K, 1986 WL 1160, at *3 (Del. Ch. Jan. 21, 1986) (citations omitted).

Here, the restrictive covenants are necessary to protect West Shore's investments in its business and the time it spent to cultivate Defendant's specialized and extensive knowledge and on-the-job training as to West Shore's unique marketing and lead generation methods, and on how West Shore tracks marketing performance and utilizes millions of dollars' worth of data to build its unique marketing mix. West Shore would invariably suffer if Defendant were permitted to solicit West Shore's customers, vendors and employees and work for West Shore competitors, all

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

while having his knowledge of West Shore's Confidential Information and Trade Secrets, particularly after he bargained and received compensation for agreeing to these restrictions. Defendant has some of West Shore's most valuable business and marketing information, and is in the position to allow West Shore's competitors to exploit that information and gain an improper competitive advantage. This is exactly what WSH sought to prevent through including the restrictive covenants in the Phantom Unit Agreement. *See Hough Assocs., Inc. v. Hill*, No. CIV.A. 2385-N, 2007 WL 148751, at *19 (Del. Ch. Jan. 17, 2007), *judgment entered*, (Del. Ch. 2007) ("…each day this status quo continues in direct contravention of the Non-Competition Agreement harms [the plaintiff.]").

By contrast, Defendant would not be prohibited from any employment because his non-compete only seeks to preclude his employment at, or providing of services to, a home remodeling company offering products and services that compete with West Shore. Accordingly, the balance tips to favor Plaintiffs' enforcement of the non-competition covenant.

In sum, Defendant's Phantom Unit Agreement contains non-solicit, non-compete, and non-disclosure obligations, all of which are valid and enforceable under Delaware law.

c.    Defendant has Breached his Post-Employment Obligations

Through the actions taken after terminating his employment with West Shore, Defendant has breached the non-solicit, non-compete, and non-disclosure provisions of both his Employment Agreement and Phantom Unit Agreement. Despite the clear obligations set forth in both such agreements, Defendant has started OLG, his own business, which provides similar, if not identical, services to those he provided during his tenure at West Shore. Moreover, Defendant has used the contacts he learned as Media Manager and Director of Media to solicit leads either for his own gain for OLG, or for the gain of West Shore's competitors. These companies provide identical

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

remodeling services in overlapping markets with West Shore. Additionally, Defendant is blatantly using West Shore's specialized business and marketing strategies to provide these services, while also relying on the extensive training he received from West Shore in his positions as Media Manager and Director of Media.

**2.    *WSH Will Succeed on its Misappropriation of Trade Secrets Claims***

Plaintiffs bring their misappropriation of trade secrets claims under the Pennsylvania Uniform Trade Secrets Act and the federal Defend Trade Secrets Act of 2016. Plaintiffs will discuss its claims under each statutory scheme in turn.

a.    WSH's Claims under the Pennsylvania Uniform Trade Secrets Act

Under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), a trade secret is defined as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. C.S. § 5302.

To determine whether information is protected as a trade secret, courts in this Commonwealth look to:

> (1) the extent to which the information is known outside of the company's business; (2) the extent to which the information is known by employees and others involved in the company's business; (3) the extent of the measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and its competitors; (5) the amount of effort or money the company spent in developing the information; and (6) the

15

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ease or difficulty with which the information could be acquired or duplicated legitimately by others.

*Bimbo Bakeries*, 613 F.3d at 109.

Here, during his employment with West Shore, Defendant had access to West Shore's Confidential Information and Trade Secrets, including, but not limited to: customer information; employee information; identities and contact information for marketing partners; demographic profiles; pricing and negotiated deals with marketing partners; current and historic performance records for every marketing channel West Shore utilizes; performance of promotional offers, including discounts, finance plans, effectiveness of marketing language, style of the creative, format length, and placement; creative testing strategy and results used to drive marketing plan adjustments; West Shore's selling system; call center processes, scripts, and key performance indicators; and corporate strategic and performance information at the branch and corporate level. This information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means, to West Shore's competitors or any other third party.

Further, West Shore has taken reasonable steps to maintain the secrecy of this information by, for example, making it available only to those employees who need to know such information in order to carry out their employment duties and who must enter a password to access such Confidential Information and Trade Secrets maintained electronically; utilizes non-competition, non-solicitation, and confidentiality agreements (such as Defendant's Employment Agreement and Phantom Unit Agreement) to protect this information and prevent unauthorized use and/or disclosure; prohibiting employees from downloading this information to their personal devices or forwarding this information to personal or third-party email addresses; and requires all employees (including Defendant) to review and acknowledge, on an annual basis, West Shore's Employee Handbook, which requires employees to safeguard West Shore's Confidential Information and

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Trade Secrets. Through these efforts, this information is not easily acquired or duplicated by others. These efforts further demonstrate the substantial time, effort, and money West Shore has invested to acquire, develop, and protect its Confidential Information and Trade Secrets.

Relevant here, PUTSA defines misappropriation as including the disclosure or use of a trade secret, without express or implied consent, by a person who acquired the trade secret under circumstances giving rise to a duty to maintain its secrecy or limit its use. 12 Pa. C.S. § 5302. Here, Defendant's actions demonstrate that he has, and will continue to, disclose or use West Shore's trade secrets in the course of his attempts to solicit West Shore's customers, vendors, and suppliers, and through his business with OLG and servicing of West Shore's direct competitors. Accordingly, this Court should conclude that WSH has demonstrated a likelihood of succeeding on the merits of its PUTSA claim.

      b.      <u>WSH's Claims under the Defend Trade Secrets Act of 2016</u>

Under the Defend Trade Secrets Act of 2016 ("DTSA"), a trade secret includes information that: (1) the owner has taken reasonable measures to keep such information secret; and (2) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of such information. 18 U.S.C. § 1839. DTSA, similar to PUTSA, defines misappropriation as the disclosure or use of a trade secret, without express or implied consent, by a person who acquired the trade secret under circumstances giving rise to a duty to maintain its secrecy or limit its use. *Id.*

Thus, given the similarities of both statutes, WSH incorporates herein by reference the above discussion of West Shore's trade secrets and Defendant's misappropriation thereof. For

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

those same reasons, this Court should conclude that WSH has demonstrated a likelihood of succeeding on the merits of its DTSA claim.

**B.      The Injunction is Necessary to Prevent Immediate and Irreparable Harm**

Pennsylvania law "makes clear that the impending loss of a business opportunity or market advantage may aptly be characterized as an irreparable injury" for purposes of a preliminary injunction. *Kessler v. Broder*, 851 A.2d 944, 941 (Pa. Super. 2004). Further, the loss of trade secret information constitutes irreparable harm sufficient to support a preliminary injunction. *Den-Tal-Ez, Inc., v. Siemens Cap. Corp.*, 566 A.2d 1214, 1232 (Pa. Super. 1989) ("It is clear that under Pennsylvania law a court of equity may fashion a trade secrets injunction that is broad enough to ensure that the information is protected.") (internal citations omitted).

West Shore will undeniably suffer all of the above forms of irreparable harm unless Defendant's misconduct is enjoined. West Shore made a long-term investment of significant time and resources to develop its Confidential Information and Trade Secrets. Defendant will continue to use this proprietary information to unfairly compete with West Shore for home remodeling customers in Pennsylvania and elsewhere. West Shore will be irreparably harmed if Defendant is permitted to reap the benefits of West Shore's investments to compete directly with West Shore. Likewise, West Short will be irreparably harmed if its competitors are allowed to profit from and enable Defendant's breach. Accordingly, the injunction is necessary to prevent immediate and irreparable harm to West Shore.

**C.      The Absence of an Injunction Would Cause More Harm to West Shore**

A plaintiff seeking a preliminary injunction "must show greater injury would result by refusing the injunction than by granting it." *Commonwealth v. Snyder*, 977 A.2d 28, 42 (Pa. Cmwlth. 2009). For purposes of the preliminary injunction, this Court can find irreparable harm based on the provisions within the Phantom Unit Agreement itself. *See* Compl. Ex. B at Ex. A ¶

18

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

8; *see also The York Grp., Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1243 (Pa. Super. 2007) (recognizing that parties can agree that breach of the contractual provisions constitutes irreparable harm). If not stopped, Defendant's continued actions will continue to cause significant harm.

The harm to West Shore is evident by virtue of the inevitable and irreversible disclosure of West Shore's Confidential Information and Trade Secrets that will result if Defendant is permitted to continue his unlawful actions. Given Defendant's high-ranking position at West Shore, his specialized and extensive knowledge of West Shore's company-wide business and marketing strategies, and his well-established relationships with customers, vendors, suppliers, lead sources, and employees, Defendant is uniquely positioned to cause immediate and incalculable harm to West Shore. If not stopped, Defendant will be capable of devastating West Shore's business.

**D.     A Preliminary Injunction Is Necessary to Preserve the Status Quo and Will Not Result in Greater Harm to Defendant**

Preliminary injunctions maintain the status quo, which is defined as "the last, peaceable, noncontested status of the parties." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (quotation omitted). West Shore's request for a special/preliminary injunction seeks no more than the return to "the last, peaceable, noncontested" position of the parties before Defendant violated the terms of the Employment Agreement and Phantom Unit Agreement. Granting the injunction to maintain the status quo would not result in greater harm to Defendant.

By contrast, the impact of Defendant's misconduct on other West Shore employees with access to the same Confidential Information and Trade Secrets is immeasurable. Courts have long held that an employer's ability to protect its trade secrets is a significant factor in favor of entering injunctive relief. *The York Grp.*, 924 A.2d at 1243 (granting of preliminary injunctive relief where employees were disregarding confidentiality section of distributor agreements and explaining that

Case # 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

status quo was employees' previous compliance with the agreements). Thus, enjoining Defendant from soliciting West Shore customers, vendors and employees, working for or servicing West Shore's competitors, and using West Shore's Confidential Information and Trade Secrets would restore the status quo that existed between the parties prior to Defendant's unlawful actions.

In short, West Shore seeks an injunction to preserve the status quo by preventing Defendant from using West Shore's Confidential Information and Trade Secrets and other proprietary documents and information or disclosing the same to a direct competitor. Defendant has the necessary capabilities and experience and is certainly permitted to accept employment that does not violate the terms of his Employment Agreement or Phantom Unit Agreement.

On the other hand, refusing to enter immediate injunctive relief will cause West Shore to lose the value of its significant investment of time and resources to protect its Confidential Information and Trade Secrets, and will result in continued diminution of West Shore's competitive advantage in the home remodeling business.

## E. The Injunction is Reasonably Suited to Abate the Offending Activity

A preliminary injunction must be reasonably suited to abate the offending activity. *Snyder*, 977 A.2d at 48. Courts sitting in equity "have jurisdiction to prevent the continuance of acts prejudicial to the interest of individual rights, including the authority to enjoin wrongful breaches of contract where monetary damages are an inadequate remedy." *The York Grp.*, 924 A.2d at 1244. Here, West Shore seeks to enjoin Defendant soliciting West Shore customers, vendors and employees, working for or servicing West Shore's competitors, and using West Shore's Confidential Information and Trade Secrets in pursuit of the same. This injunction is a reasonable measure to abate the offending activity.

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**F.    The Preliminary Injunction Will Not Adversely Affect the Public Interest**

The public has a generalized interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements. In evaluating the public interest, courts generally weigh the following:

> The right of an employer to be protected against unfair competition stemming from misappropriation of its trade secrets must be balanced against the right of an individual to the unhampered pursuit of the occupation and livelihood for which she is best suited.

*Renee Beauty Salons, Inc. v. Blose-Venable*, 652 A.2d 1345, 1347 (Pa. Super. 1995). Here, West Shore's right to protection outweighs Defendant's interests in pursuing his livelihood. To be clear, West Shore is not requiring Defendant to forego pursuit of his livelihood. Instead, Defendant's livelihood should not be based on employment with West Shore competitors that is founded on his disclosure of West Shore's Confidential Information and Trade Secrets.

West Shore has spent a significant amount of time and money in developing its Confidential Information and Trade Secrets. It has taken significant steps to protect this information from disclosure, including through its various agreements with employees. Because of West Shore's significant investment in its Confidential Information and Trade Secrets, including proprietary documents and information, and the significant efforts it takes to protect them, an injunction should be entered. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1263-64 (3d Cir. 1985) (finding unnecessary an "extended analysis of the public interest [because] extensive precedent supports an injunctive remedy where the elements of a trade secret claim are established."). Further, the public at large has an interest in the freedom to bargain and contract without having third parties interfere with those contracts. Accordingly, the public interest will not be harmed by an injunction.

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiffs West Shore Home, LLC and West Shore Home Holdings, LLC respectfully request that the Court grant their Motion for Special Injunction with Notice and a Preliminary Injunction After a Hearing pursuant to Pennsylvania Rule of Civil Procedure 1531, and enjoin Defendant from actions and conduct that violate the terms of his Employment Agreement and Phantom Unit Agreement.

Respectfully submitted,

By: _____
Thomas G. Collins (I.D. #75896)
Sara E. Myirski (I.D. #321113)
Cheri A. Sparacino (I.D. #325868)
**BUCHANAN INGERSOLL & ROONEY PC**
409 North Second Street, Suite 500
Harrisburg, PA  17101
Tel:    (717) 237-4800
thomas.collins@bipc.com
sara.myirski@bipc.com
cheri.sparacino@bipc.com

*Counsel for Plaintiffs*

Dated:  January 20, 2022

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  West Shore Home, LLC and
               West Shore Home Holdings, LLC

Signature:  *Thomas G Collins*

Name:  Thomas G. Collins

Attorney No.:  75896

Case# 2022-00533-2 Received at Cumberland County Prothonotary on 01/21/2022 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

I hereby certify that I am this 20th day of January 2022 serving a copy of the foregoing document upon the following person(s) by the following methods that comply with the Pennsylvania Rules of Civil Procedure.

Larry A. Weisberg, Esq.
Weisberg Cummings, PC
2704 Commerce Drive B
Harrisburg PA 17110
*Counsel for Defendant*
lweisberg@weisbergcummings.com

Thomas G. Collins
*Counsel for Plaintiffs*