# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| West Shore Home, LLC and <br> West Shore Home Holdings, LLC | ) <br> ) <br> ) | |
| *Plaintiffs*, | ) <br> ) | Docket No. 1:22-cv-00204-JPW |
| v. | ) <br> ) | |
| Craig Chappell, | ) <br> ) | |
| *Defendant*. | ) | |

## ORDER FOR PRELIMINARY INJUNCTION BY CONSENT

Plaintiffs, West Shore Home, LLC and West Shore Home Holdings, LLC (collectively hereinafter, "West Shore"), and Defendant, Craig Chappell (hereinafter, "Chappell"), having reached agreement as to the terms of a Preliminary Injunction by Consent, seek the entry of this Order by the Court.

The Court, concluding that the requirements for the issuance of a Preliminary Injunction by Consent under FED. R. CIV. P. 65 have been satisfied, issues the following Order:

**AND NOW**, this 22nd day of March, 2022, it is hereby **ORDERED** that pursuant to FED. R. CIV. P. 65(d)(1), this Court sets forth: (a) the facts underlying the issuance of the Preliminary Injunction contained in this Order; (b) the reasons for issuing the Preliminary Injunction by Consent; and (c) the specific acts being restrained as follows:

**A.     The Underlying Facts as Alleged in the Complaint**

1. Chappell was hired by West Shore on December 3, 2018, as its Media Manager.

2. On or about January 11, 2021, Chappell was promoted to Director of Media.

3. During his employment, Chappell was regularly supplied with, and had access to, West Shore's Confidential Information and Trade Secrets, as such term is defined in Paragraph 33 of the operative Complaint.

4. On or about August 4, 2020, Chappell executed an Employment Agreement (hereinafter, the "Employment Agreement").

5. On or about January 14, 2021, Chappell executed a letter agreement titled "Grant of Phantom Units" (hereinafter, the "Phantom Unit Agreement"; with the Employment Agreement, collectively, the "Agreements").

6. Pursuant to the Agreements, Chappell agreed to certain restrictive covenants following the termination of his employment with West Shore.

7. More specifically, pursuant to the Employment Agreement, Chappell is prohibited, for a period of twenty four (24) months after the termination of his employment with West Shore, from directly or indirectly, in any capacity, working for any competitive business within 250 miles of any of West Shore's locations.

8. Chappell is also prohibited, pursuant to the Employment Agreement,

for a period of three (3) years after his employment with West Shore ends, from using West Shore's Confidential Information or disclosing West Shore's Confidential Information to any third party.

9. Additionally, under the terms of the Employment Agreement, Chappell is prohibited, for a period of twenty four (24) months after the termination of his employment with West Shore, from directly or indirectly, inducing, soliciting, or attempting to induce or solicit any employee of West Shore to terminate his or her relationship with West Shore, or hiring or engaging such employee.

10. Further, under the terms of the Phantom Unit Agreement, Chappell is prohibited, for a period of twenty four (24) months following the termination of his employment with West Shore, from directly or indirectly, working in any capacity for any competitor of West Shore.

11. Pursuant to the Phantom Unit Agreement, Chappell is also prohibited from using West Shore's Confidential Information and Trade Secrets or disclosing West Shore's Confidential Information and Trade Secrets to any third party.

12. Additionally, under the terms of the Phantom Unit Agreement, Chappell is prohibited, for a period of twenty four (24) months following the termination of his employment with West Shore, from directly or indirectly, recruiting, inducing, or soliciting any employee of West Shore to terminate his or her employment with West Shore or employing any such individual.

13. On October 6, 2021, Chappell's employment relationship with West Shore terminated.

14. Following the termination of his employment with West Shore, Chappell started his own business, Optimized Lead Generation ("OLG").

15. Chappell, either directly or through OLG, provides media buying, marketing and advertising services. Thus, Chappell is providing services that are similar to, if not the same as, the services he performed for West Shore as Media Manager and later Director of Media.

**B.     The Reasons for the Preliminary Inunction**

16. West Shore has alleged that Chappell, either directly or through OLG, has solicited business from, or provided services to, West Shore's direct competitors including, but not limited to, P.J. Fitzpatrick, LLC ("P.J. Fitzpatrick"), Homespire Windows, LLC ("Homespire"), and Love Your Bath, LLC ("Love Your Bath") in violation of the Agreements.

17. West Shore has alleged that Chappell, either directly or through OLG, has disclosed and is utilizing West Shore's Confidential Information and Trade Secrets, as such term is defined in Paragraph 33 of the operative Complaint, in violation of the Agreements.

18. West Shore has alleged that Chappell, either directly or through OLG, has solicited West Shore's employees in violation of the Agreements.

4

19. West Shore has alleged that it will suffer immediate and irreparable harm if Chappell is not immediately enjoined from soliciting and performing services for West Shore's direct competitors.

20. West Shore has alleged that it will suffer immediate and irreparable harm if Chappell is not immediately enjoined from utilizing West Shore's Confidential Information and Trade Secrets for his individual benefit, the benefit of OLG, and for the benefit of West Shore's direct competitors.

21. West Shore has alleged that it will suffer immediate and irreparable harm if Chappell is not immediately enjoined from misappropriating and utilizing West Shore's Confidential Information and Trade Secrets.

22. West Shore has alleged that it will suffer immediate and irreparable harm if Chappell is not immediately enjoined from soliciting West Shore's employees.

23. Based on West Shore's Complaint and supporting documents, and the representations of the parties, including specifically Chappell's consent to the entry of this Preliminary Injunction, the Court finds that the requirements under the FED. R. CIV. P. for the entry of the Preliminary Injunction outlined in this Order have been met and West Shore is entitled to the relief set forth below.

C. **The Specific Acts Being Restrained**

24. For purposes of this Order, West Shore's Confidential Information and

Trade Secrets shall be as defined in Paragraph 33 of the operative Complaint.

25. For purposes of this Order, a "competitor" of West Shore is defined as any individual or business that is engaged in the provision of residential home remodeling services and, specifically, providing remodeling services for windows, doors and/or bathrooms.

26. Until further Order, Chappell is hereby enjoined from:

   a. directly or indirectly, being employed by, or performing services for, in any capacity, any competitor of West Shore, including, but not limited to, P.J. Fitzpatrick, Window Nation, Love Your Bath, Paramount Builders, Newpro, and Florida Home Improvement Associates ("FHIA"), for a period of twenty-four (24) months from the date of entry of this Order;

   b. directly or indirectly recruiting, inducing, or soliciting marketing business from any competitor of West Shore, for a period of twenty-four (24) months from the date of entry of this Order;

   c. directly or indirectly recruiting, inducing, or soliciting any employee of West Shore to terminate his or her employment or other relationship with West Shore or employing any such individual, for a period of twenty-four (24) months from the date of entry of this Order;

   d. misappropriating, using, disclosing, communicating, furnishing, divulging, or making available to P.J. Fitzpatrick, Window Nation, Love Your Bath, Paramount Builders, Newpro, FHIA, or any other competitor, any of West Shore's Confidential Information and Trade Secrets;

   e. misappropriating, using, or disclosing to any person or entity West Shore's Confidential Information and Trade Secrets;

   f. possessing any original, copies, or summaries of West Shore's Confidential Information and Trade Secrets in any

    form, electronic or otherwise; and

  g. Chappell shall return any of West Shore's Confidential Information and Trade Secrets in his possession or control to West Shore's counsel within five (5) days of the issuance of this Order.

  **IT IS FURTHER ORDERED** that this Preliminary Injunction by Consent shall not prejudice any Party's position or ability to assert any claim or defense in the above-captioned litigation, and any findings or conclusions herein shall not have preclusive effect.

  **IT IS FURTHER ORDERED** that West Shore shall post a bond in the amount of $500.00 to support the issuance of this Preliminary Injunction by Consent. The bond may be paid by check from the law firm of Buchanan Ingersoll & Rooney PC.

  **IT IS FURTHER ORDERED** that the Preliminary Injunction by Consent shall remain in effect until final judgment or further order of this Court.

  **IT IS FURTHER ORDERED** that the hearing scheduled for April 15, 2022, on West Shore's motion for preliminary injunction is cancelled.

  **IT IS FURTHER ORDERED** that the expedited discovery schedule set forth in this Court's Order dated March 17, 2022 (Doc. 21, ¶ 3) is no longer in effect.

  **IT IS FURTHER ORDERED** that the briefing schedule on West Shore's Motion for Preliminary Injunction, as set forth in this Court's Order dated March 2, 2022 (Doc 10, ¶ 1), is cancelled.

**IT IS FURTHER ORDERED** that the schedule for briefing on Chappell's motion to dismiss set forth in this Court's Order dated March 17, 2022 (Doc. 21, ¶ 4) shall remain in effect.

**IT IS FURTHER ORDERED** that the parties shall be permitted to engage in discovery in the ordinary course pursuant to the Fed. R. Civ. P in advance of the Rule 16 Conference.

BY THE COURT:

\_\_s/ Jennifer P. Wilson_____
U.S. District Judge