## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEST SHORE HOME, LLC, *et al.*, | : | Civil No. 1:22-CV-00204 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG CHAPPELL, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Following a hearing, the court found that Defendant Craig Chappell ("Chappell") was in contempt. Thereafter, Plaintiffs West Shore Home, LLC and West Shore Home Holdings, LLC (collectively "West Shore"), filed a petition for contempt sanctions. The court granted in part, denied in part, and deferred in part West Shore's petition. Now, following supplemental briefing, the court addresses the two issues on which it deferred judgment: the reasonableness of West Shore's attorneys' fees related to contempt preparation, and its costs related to discovery of Chappell's contempt.

## BACKGROUND

Because the court writes for the benefit of the parties, it includes here only the background necessary for resolution of the instant dispute for attorneys' fees and costs. On September 20, 2022, West Shore filed an emergency motion to lift a stay of deadlines, which the court had imposed, and to request a hearing for civil

contempt.  (Doc. 61.)  West Shore advised the court that it had become aware that Chappell had violated the preliminary injunction, which the court issued by consent of the parties (the "PI").

On October 27, 2022, following a status conference and briefing by the parties, the court scheduled a contempt hearing for March 16, 2023.  (Doc. 71.) On March 15, 2023, Chappell filed a Chapter 7 bankruptcy petition, which triggered an automatic stay of this action.  (Doc. 103.)  On March 16, 2023, after conferring with counsel regarding the automatic stay, the court continued the contempt hearing.  (Doc. 105.)

On July 17, 2023, the court became aware that the bankruptcy court had granted West Shore's motion for relief from the automatic stay.  *In re: Craig R. Chappell*, No. 23-BK-542, Doc. 40 (Bankr. M.D. Pa. July 13, 2023).  On July 25, 2023, following a status conference, the court rescheduled the contempt hearing for October 5, 2023.  (Doc. 112.)

The contempt hearing was held on October 5, 2023.  (Doc. 125.)  At its conclusion, the court made findings of fact.  The court found that West Shore, as the party moving for contempt, had met its burden of proving contempt. (Doc. 133, p. 200.)

After the hearing, West Shore submitted its brief requesting contempt sanctions, which included attorneys' fees and costs.  (Doc. 134.)  After briefing,

the court granted in part, denied in part, and deferred in part judgment as to West Shore's petition for contempt sanctions. (Doc. 146.) Insofar as West Shore sought attorneys' fees, the court found that the rates billed for work by attorneys Collins, Myirski, and Sparacino, as well as paralegal Sunchych were reasonable. (Doc. 145, p. 14–17.)

However, the court deferred judgment as to whether West Shore should be awarded attorneys' fees related to contempt preparation or costs related to discovery of Chappell's contempt. (Doc. 146, ¶ 4.) The court set a schedule for further briefing regarding these two issues. (*Id.*) West Shore submitted a brief and exhibits in support of its request for fees and costs, and Chappell filed an opposition brief. (Docs. 147, 147-1, 148.) Although West Shore's time has not yet expired to file a reply, the court finds that the instant dispute has been sufficiently briefed.

### STANDARD OF REVIEW

"Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (quoting *McDonald's Corp. v. Victory Invs.,* 727 F.2d 82, 87 (3d Cir.1984). As the Third Circuit has stated, "attorneys' fee awards are remedial and designed to compensate complainants for losses incurred as a result of the contemnors'

violations." *Id.* at 401 (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 869 (3d Cir. 1990) (internal quotation marks omitted). Monetary contempt sanctions must have some basis in the record. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113–14 (3d Cir. 1970). The "fine imposed for civil contempt" may "not exceed the actual damages caused the offended party by a violation of the court's order." *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982). And the "sanction imposed on a civil contemnor for his past conduct may not exceed the actual damages caused by his violation of the court's order." *McDowell v. Phila. Hous. Auth*, 423 F.3d 233, 240 (3d Cir. 2005).

Although the Third Circuit has not directly addressed what evidentiary standard applies to contempt sanctions, federal courts in Pennsylvania have followed the lead of other circuits and applied a preponderance of the evidence standard. *Cardionet, LLC v. MedNet Healthcare Techs., Inc.*, 146 F. Supp. 3d 671, 692–93 & n.24 (E.D. Pa. 2015); *McNulty v. Middle East Forum*, 2021 WL 510277, at *2 & n.3 (E.D. Pa. 2021).

With respect to attorneys' fees, the Supreme Court has stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This method of calculating attorney's fees is frequently called the "lodestar" method. *See Angino*

*v. Transunion, LLC*, No. 17-0954, 2019 WL 8161110, at *2 (M.D. Pa. Nov. 25, 2019). The lodestar method consists of a burden shifting framework in which "[t]he party seeking attorney's fees has the [initial] burden to prove that its request for attorney's fees is reasonable." *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 561 (D. Del. 2019). "To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed." *Id.* (citation and quotation marks omitted). Once the fee petitioner satisfies this burden, the presumption is that the lodestar is the reasonable fee. *Id.*

At that point, the party seeking an adjustment to the requested amount has the burden of proving that an adjustment is necessary. *Id.* To do so, "the party opposing the fee award [must come forward with] affidavit[s] or [a] brief with sufficient specificity to give fee [petitioner]s notice [they are opposing] the reasonableness of the requested fee."[1] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). In short, once a fee petitioner has carried the initial burden, the party opposing the fee "may contest that prima facie case only with appropriate record evidence." *Smith v. Phila. Housing Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). "In determining whether the number of hours claimed is reasonable, the court may divide the claimed hours according to the type of work performed."

---

[1] The court in *Rode* stated that this framework applied specifically to "statutory fee" cases. 892 F.2d at 1183. But some courts have applied the same standard to a context of civil contempt. *See Apple Corps. Ltd. v. Int' Collectors Soc.*, 25 F. Supp. 2d 480, 485 (D.N.J. 1998).

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2014 WL 2860863, at *6 (M.D. Pa. June 23, 2014), *amended*, 2014 WL 2991813 (M.D. Pa. July 2, 2014), *aff'd*, 612 F. App'x 612 (Fed. Cir. 2015).  Excessive, redundant, or otherwise unnecessary hours are unreasonable.  *Rode*, 892 F.2d at 1183 (quoting *Hensley*, 461 U.S. at 433).  Only when the party opposing a fee award has met this burden can a court consider whether to exercise its discretion and adjust the requested amount of fees.  Therefore, where "the party opposing the fee award does not meet its burden, the court must award the attorneys' fees at the requested rate."  *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 564 (D.N.J. 2013).

<h2 style="text-align:center">DISCUSSION</h2>

In the prior memorandum addressing WSH's request for contempt sanctions, this court deferred judgment on two issues: (1) whether the hours billed for contempt preparation were reasonable; and (2) the reasonableness of the costs West Shore incurred related to discovery of the contempt.  (Doc. 146, ¶ 4.)

West Shore has provided supplemental briefing, which subdivides its fees for contempt preparations into six subcategories:

**Subcategory 1**: The preparation of the initial paperwork to move this Court for contempt and opposing Chappell's attempt to continue the March 16, 2023 Hearing;

**Subcategory 2**: Meetings, outlines, and development of strategies to be employed and exhibits to be presented at the March 16, 2023 Hearing;

6

**Subcategory 3**: Attendance at the March 16, 2023 Hearing;

**Subcategory 4**: Meetings, outlines, and development of strategies to be employed and exhibits to be presented at the October 5, 2023 Hearing;

**Subcategory 5**: Attendance at the October 5, 2023 Hearing;

**Subcategory 6**: The preparation of post-hearing briefing following the October 5, 2023 Hearing.

Plaintiffs further refer to the Second Supplemental Declaration of Thomas G. Collins, attached hereto as **Exhibit A**. *See also* Doc. 136 (unredacted copies of the invoices substantiating each entry within the table of Exhibit A-1) (under seal). (Doc. 147, pp. 2–3.) West Shore similarly subdivides its costs for discovery of the contempt into six subcategories:

**Subcategory 7**: Copying and delivery fees for letters and subpoenas, including process servers;

**Subcategory 8**: Searches for corporations and individuals via individual state corporate filings and Accurint reporting;

**Subcategory 9**: Costs for depositions of witnesses, including attorney travel fees and room/transcript/videographer fees;

**Subcategory 10**: Witness attendance fees;

**Subcategory 11**: Costs for exhibits used in depositions; and

**Subcategory 12**: Fees charged by entities to produce documents responsive to Plaintiffs' subpoenas.

*See* **Exs. A, A-1**; *see also* Doc. 136 (under seal).  (*Id.* at 7.)  It cites invoices, previously filed under seal, which provide detailed accounts of the fees and costs for which West Shore seeks to be recompensed.  (*Id.*; *see also* Docs. 136, 136-1.)

**A. The court will grant West Shore's request for attorneys' fees.**

Regarding attorneys' fees, West Shore presents multiple arguments as to why they are reasonable. Here, the court only addresses West Shore arguments as to the subcategories that Chappell disputes.

Regarding subcategories 2 and 4, West Shore argues that Chappell, not West Shore, had the ability to limit West Shore's attorneys' fees. (*Id.* at 4–5.) West Shore fully prepared for the March 2023 contempt hearing when Chappell filed for bankruptcy on the eve of the hearing. (*Id.*) That filing was not related to any recent developments, but was rather in response to this action. (*Id.*) Had Chappell filed earlier, rather than waiting until the last minute, West Shore could have avoided preparation costs for the March 2023 hearing. (*Id.*)

There were nearly seven months between the initial March 16, 2023, hearing and the ultimate October 5, 2023 hearing. In the interim, this case was mostly dormant because Chappell's bankruptcy triggered an automatic stay in this litigation. (*Id.*) Because of the dormancy, when the stay was lifted, counsel needed to "refresh their respective recollections relative to the facts and arguments. Additionally, given the bankruptcy filing, they fine-tuned the strategy, changing various exhibits they intended to present at the Hearing. For example, counsel elected to prepare a presentation of the videotaped depositions of Dreamstyle

Remodeling, LLC ("Dreamstyle") representatives Dawn Dewey and Jay Shaw as well Chappell, which was not contemplated at the first Hearing." (*Id.* at 5.)

West Shore also posits that it has not had to litigate a contempt dispute of this scope before. (*Id.* at 6.) The nature of this dispute was highly complex because of Chappell's attempt to conceal his conduct, including his false testimony and incomplete discovery responses. (*Id.*) These complications required West Shore to engage in detailed research and preparations. (*Id.*)

Chappell raises two arguments in response. The first is general and the second is specific. First, Chappell argues that the hours spent in hearing preparation was excessive. (Doc. 148, p. 3 (citing *Microsoft Corp. v. United Computer Res. Of N.J., Inc.*, 216 F. Supp. 2d 383, 388 (D.N.J. 2002).) In the court's prior memorandum, we rejected this argument as undeveloped and unclear. (Doc. 145, p. 17 & n.5.) The court also found *Microsoft Corp.* to be meaningfully distinguishable from the present instance. (*Id.* at n.5.) In resurrecting his argument, Chappell provides no new legal support or development of the argument.[2]  The court rejects this rehashed argument.

---

[2] In raising this argument, Chappell does cite one additional legal authority insofar as he mentions that his citation to *Microsoft Corp.* in turn cites *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1039 (3d Cir. 1996). (Doc. 148, p. 3.) But Chappell does not directly cite *Washington* or represent that it applies to this dispute.

Chappell also makes assertions that are unclear or inaccurate. For example, he states that the billed "hearing time" of the two contempt hearings was three hours rather than the actual nineteen hours. (*Id.*)

Next, Chappell raises a specific argument regarding attorneys' fees related to preparation for the second contempt hearing: they should be limited to between one-fourth and one-half of the hours spent in preparing for the first hearing. (Doc. 14, p. 5.) In making this argument, Chappell cites neither to law nor fact. Nor does he meaningfully respond to West Shore's arguments. He acknowledges that the nearly seven months between hearings "would require some refreshing of preparation." (Doc. 148, p. 4.) But he ignores the fact-specific nature of the contempt proceeding and the fact that the case was dormant for seven months. He also fails to address West Shore's argument that, in preparing for the October 2023 hearing, it employed new strategies including the presentation of videotaped depositions.

The court finds that West Shore has met its burden in showing that the hours it seeks in attorneys' fees are reasonable in all six categories. Having done so, the burden shifted to Chappell, who failed to meet his burden of contesting West Shore's prima facie case with appropriate record evidence. The court will grant West Shore's request for attorneys' fees related to contempt preparation.

**B. The court will grant West Shore's request for costs.**

Chappell argues that West Shore's costs are insufficiently documented with respect to all of its subcategory 9 and some of its subcategory 11 costs. (Doc. 148, p. 6.) Because West Shore's costs under subcategory 9 constitute 74.7% of the

costs being sought, Chappell asserts that they are "lump[ed] without specifying, payments for transcripts and videographers and airlines and hotels for attorneys." (*Id.*)  Chappell argues that West Shore has effectively offered no additional details than it did previously, when this court found there was insufficient evidence.  (*Id.*)

In raising these arguments, Chappell cites no legal authority and hardly relies on the record.  He appears entirely unaware of, or to purposefully ignore, the sealed invoices to which West Shore cites.  Had he referenced them, he would have found detailed accounts for the costs included in subcategories 9 and 11. (Doc. 136-1, pp. 43, 57–58, 73–74, 88–89, 110, 146, 152.)

West Shore has met its initial burden by providing invoices, the second supplemental declaration of attorney Collins, and tables for its costs, and tables categorizing its costs.  By contrast, Chappell's objections to these costs are vague, lack any legal citation, and are divorced from the factual record.  Therefore, the court will award the costs West Shore seeks for discovery of Chappell's contempt.

CONCLUSION

For the reasons stated above, the court finds that the hours West Shore was billed for contempt preparation and the costs West Shore incurred related to discovery of the contempt were reasonable.  The court will grant West Shore's requests for these fees and costs.  An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 12, 2024